#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF ALABAMA
#### MIDDLE DIVISION

| | |
|---|---|
| **ERIC DARRELL RUMPH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:11-CV-3844-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Plaintiff Eric Darrell Rumph ("Mr. Rumph") brings this action under 42 U.S.C. § 405(g) (2006), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Rumph timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

### FACTUAL AND PROCEDURAL HISTORY

Mr. Rumph was thirty-four years old at the time of his hearing before the

Administrative Law Judge ("ALJ"). (*See* Tr. 130). He has completed the twelfth grade and a year of technical college. (Tr. 127, 150). His past relevant work experiences include employment as a route salesman and mail clerk. (Tr. 26, 145-46, 155-163). He claims he became disabled on February 24, 2007, due to a herniated disc with associated low back pain. (Tr. 130, 143-44, 164-69). His last period of work ended on February 23, 2007. (Tr. 38).

On September 24, 2007, Mr. Rumph protectively filed a Title II application for a period of disability and DIB. (Tr. 19). On December 5, 2007, the Commissioner initially denied these claims. (*Id.*). Mr. Rumph filed a written request for a hearing on February 15, 2008, that was untimely but that the ALJ excused for good cause shown. (*Id.*). The ALJ conducted a hearing on the matter on October 22, 2009, at which Mr. Rumph appeared and testified. (*Id.*). On November 21, 2009, the ALJ issued his opinion concluding Mr. Rumph was not disabled and denying him benefits. (Tr. 27). Mr. Rumph timely petitioned the Appeals Council to review the decision on December 8, 2009. (Tr. 14-15). On September 8, 2011, the Appeals Council issued a denial of review on his claim. (Tr. 1-4).

Mr. Rumph filed a Complaint with this court on November 7, 2011, seeking review of the Commissioner's determination. (Doc. 1). With the parties having fully briefed the matter, the court has carefully considered the record and reverses the

decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

> (4) whether the claimant can perform his/her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ here found that Mr. Rumph met the insured status requirements of the Social Security Act through December 31, 2011. (Tr. 20). He also found that Mr. Rumph had not engaged in substantial gainful activity since February 24, 2007, the alleged onset date of his disability. (*Id.*). He further concluded that Mr. Rumph had degenerative disc disease at L5-S1 of his spine, which qualified as a severe impairment. (*Id.*). The ALJ then held that this medically-determinable impairment

did not meet or medically equal one those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations. (Tr. 21).

After considering Mr. Rumph's stated symptoms and their congruence with the objective medical evidence, the ALJ found that Mr. Rumph had the residual functional capacity ("RFC") to perform sedentary work with a few additional limitations. (*Id.*). Specifically, he concluded that Mr. Rumph:

> . . . [can] lift and carry up to 10 pounds occasionally and five pounds frequently; can sit for a total of six hours in an eight-hour workday with regular breaks and stand/walk for a total of two hours; has no limitations in pushing/pulling with the upper and/or lower extremities; can frequently (defined as two-thirds of a workday) climb ramps/stairs, balance, stoop, kneel, crouch, and crawl but is unable to climb ladders/ropes/scaffolds; has no manipulative, communicative, or visual limitations; can tolerate unlimited exposure to temperature extremes, wetness, humidity, noise, vibration, and respiratory irritants but should avoid concentrated exposure to hazards such as unprotected heights; and can otherwise perform sedentary work at defined in 20 C.F.R. § 404.1567(a).

(*Id.*). He in turn discredited Mr. Rumph's testimony at the hearing that he had pain radiating from his back into his buttocks and down both legs. (Tr. 21). To justify this conclusion, the ALJ pointed to (1) the relatively mild MRI results Mr. Rumph had produced during the period of his claimed disability, (2) the fact that none of his various doctors had prescribed surgical intervention, (3) the findings from one of his medical examinations that confirmed "normal muscle strength and muscle tone in the lower extremities . . . and no signs of muscle atrophy from disuse" as recent to the

decision date as October 2009; and (4) the inconsistent reports Mr. Rumph had given regarding his pain management efforts and reported medication side effects. (Tr. 21-25).

The ALJ also chose to afford "little weight" to the opinion of Dr. Stephen Russell, M.D., Mr. Rumph's treating physician at the time of the hearing. (Tr. 25). He did so because (1) no party had provided him with Dr. Russell's treatment records, (2) there was no evidence to support the limitations on Mr. Rumph's functional capacity that Dr. Russell described on the Physical Capacities Form he completed on October 21, 2009; and (3) Dr. Russell's responses on that form were "inconsistent and contradictory both on their face and with the other evidence of record." (*Id.*). The ALJ also afforded "little to no weight" to the opinion of Dr. Donald Blanton, PhD, that Mr. Rumph was "100% disabled" or the opinion of Dr. William Crunk, PhD, that Mr. Rumph had "100% loss of employability." (*Id.*). He discredited these opinions primarily because they addressed the ultimate issue of disability eligibility, which he deemed the Commissioner's sole prerogative to determine. (*Id.*).

The ALJ then found that Mr. Rumph was unable to perform any past relevant work, as the demands of such occupations surpassed his capacity to perform "no more than sedentary work." (Tr. 26). He also found that Mr. Rumph was thirty-one years old at the time of the alleged disability onset date, had at least a high school

education, and was able to communicate in English. (*Id.*). The ALJ also noted that the transferability of job skills was not material to his determination of Mr. Rumph's eligibility because using the Medical-Vocational Rules as a framework supported a finding that Mr. Rumph was not disabled, regardless of whether Mr. Rumph had transferable job skills. (*Id.*).

Considering Mr. Rumph's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Mr. Rumph could perform. (*Id.*). In reaching this conclusion, he relied on a vocational expert, Mr. Dan Kinard. (*Id.*). Mr. Kinard testified that, given all of the stated factors, an individual in Mr. Rumph's position would be able to perform the requirements of representative occupations such as optical polisher, small parts inspector, and semiconductor bonder. (*Id.*). Mr. Kinard further vouched that available jobs for such positions existed in significant numbers in both the region and across the nation. (*Id.*). Based on this assessment and on the entire record, the ALJ found that Mr. Rumph was not disabled between February 24, 2007, through November 21, 2009, the date of the decision. (Tr. 27).

## ANALYSIS

### I. INTRODUCTION

The court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Rumph urges this court to reverse the Commissioner's decision to deny him benefits on two grounds: (1) the ALJ erred in rejecting the opinion of Dr. Russell, Mr. Rumph's treating physician, and (2) the ALJ's RFC finding was not based on substantial evidence. (Doc. 9 at 7-8). As the court agrees with Mr. Rumph's first objection, it does not address the latter.

## II.  THE ALJ FAILED TO APPLY THE PROPER LEGAL STANDARD IN DISCREDITING DR. RUSSELL'S OPINION.

The ALJ wrongly discounted Dr. Russell's medical evaluation of Mr. Rumph's physical capacity and functional limitations. The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis*

---

[2]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

*v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records. *Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

In this case, Mr. Rumph submitted two documents to the ALJ that were authored by Dr. Russell: a Clinical Assessment of Pain ("CAP") form, dated October 21, 2009, and a Physical Capacities Evaluation ("PCE") form, dated the same day. (Tr. 303-307) The CAP form listed three multiple-choice questions:

1. To what extent is pain of significance in the treatment of this patient?
2. To what extent will physical activity, such as walking, increase the level of pain experienced?
3. To what extent would side effects of medication impact the patient's ability to work?

(Tr. 303). In response, Dr. Russell circled the following corresponding answers on the form:

1. Pain is present to such as [sic] extent as to be distracting to adequate performance of daily activities or work.
2. Greatly increases pain to such a degree to distract from tasks or total abandonment of task.
3. Side effects can be expected to be severe and limit effectiveness due to inattentiveness and drowsiness.

(*Id.*). The PCE form included fifteen questions about Mr. Rumph's functional abilities. (Tr. 304-307). In filling it out, Dr. Russell opined that Mr. Rumph could:

- Only sit, stand, or walk for one hour at a time during an eight-hour workday.
- Not sit, stand, or walk for any hours during the entire day.
- Lift or carry up to 20 lbs. only occasionally and could never lift any weight above that.
- Use both hands for simple grasping, pushing and pulling of arms controls, and fine manipulation.
- Use both feet for repetitive movements such as pushing and pulling of leg controls.
- Bend, squat, crawl, climb, and reach only occasionally.

(*Id.*). Dr. Russell also vouched that Mr. Rumph's impairments have lasted or could be expected to last at least twelve months, that he was not malingering, and that his impairments were reasonably consistent with the symptoms and functional limitations described in the form. (Tr. 305). Dr. Russell further asserted that Mr. Rumph's experience of pain and other symptoms was severe enough that it would occasionally

interfere with his attention and concentration needed to perform even simple work tasks and that he was only capable of low stress jobs. (Tr. 306). He explained that Mr. Rumph's "current depression due to prolonged illness/pain affects his ability to deal with stress." (*Id.*). Additionally, Dr. Russell agreed that Mr. Rumph needed a job that permitted him to shift positions at will from sitting, standing, or walking and that he would need to take about three to four unscheduled breaks during an eight-hour workday. (*Id.*). According to Dr. Russell, Mr. Rumph did not need to have his legs elevated during prolonged sitting, but he would have to take about four days off per month due to his impairments. (Tr. 306-7). Last, Dr. Russell stated that Mr. Rumph's physical limitations had existed since his first visit with Dr. Williams on October 25, 2006. (Tr. 307).

As noted, the ALJ afforded "little weight" to these opinions. (Tr. 25). He justified this decision on three grounds: (1) the absence of Dr. Russell's treatment records; (2) the lack of support for his described limitations on Mr. Rumph's physical capacity from other evidence on the record; (3) the internal inconsistency of his responses and their variance from the other record evidence. (*Id.*). He specified his objections in the following manner:

> [Dr. Russell] indicates that the claimant is able to sit, stand, and walk for a total of one hour each at a time but also that he cannot sit or stand/walk for a total of even one hour each over an eight-hour period. He indicates that the

claimant would be expected to experience pain or other symptoms severe enough to interfere with concentration and attention only occasionally but also characterizes him as having pain to such an extent as to be distracting to adequate performance of daily activities or work.  He indicates that the claimant can use his arms and legs repetitively for pushing and pulling without limitation and occasionally lift and carry up to 20 pounds, bend, squat, crawl, climb but also indicates that physical activities would be expected to produce pain to such an extent as to distract from or cause total abandonment of tasks.  Finally, Dr. Russell indicates that the claimant experiences severe medication side effects that limit his effectiveness due to inattentiveness and drowsiness.  As noted above, according to Dr. Cosgrove's notes, the claimant has denied any medication side effects at all since initiating treatment with him in November 2008 and has provided contradictory statements regarding side effects prior to that time.

(*Id.*).  The Commissioner further defends the ALJ's judgment here by pointing to four pieces of evidence that supposedly contradict Dr. Russell's opinion: (1) an October 2008 MRI that revealed degenerative joint disease of the SI joints and "mild" L5-S1 degenerative disc disease with a "tiny" disc herniation; (2) a later discogram that confirmed lumbar degenerative disc disease with lumbar radiculitis; (3) the fact that Dr. Johnny Carter, Mr. Rumph's former treating physician, restricted him to lifting, pushing, or pulling over forty pounds; and (4) the fact that Dr. Feist, an examining physician, released him to return to regular activity in March 2007. (Doc. 10 at 8-9).

This evidence is not "good cause" to disregard Dr. Russell's medical opinion.  The Commissioner implicitly admits that Dr. Russell's assessment of Mr. Rumph, if fully credited, would support the conclusion that Mr. Rumph was "disabled" under

the Social Security Act during the claimed eligibility period. Therefore, in order to meet the "good cause" standard, he must show that Dr. Russell's opinion was either not bolstered by the evidence, conclusory, or inconsistent with his own medical records. *Phillips*, 357 F.3d at 1241 (citation omitted). The Commissioner largely argues the first point, but he fails to make his case. As a preliminary matter, the Commissioner does not cite any law that dictates a claimant must substantiate a treating physician's (authenticated) opinion with that physician's treatment records. So, the absence of such records is not dispositive on the issue of disability eligibility. Indeed, the court will treat it as an irrelevant consideration here.[3]

More important, the substance of the Commissioner's objection – that Dr. Russell's opinion contradicts the thrust of the remaining record evidence – is inaccurate. The Commissioner's rendition of the medical evidence ignores the fact that Mr. Rumph's pain symptoms progressively worsened over the period of claimed disability. When this dynamic is taken into consideration, Dr. Russell's diagnosis adequately aligns with the earlier findings on Mr. Rumph's condition. It would specifically explain the asserted inconsistency between Dr. Russell's assessment and

---

[3]The court is not responsible for addressing underdeveloped arguments made by the parties. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enters., Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

14

those of Dr. Carter and Dr. Feist. The latter physicians examined Mr. Rumph in the spring and summer of 2007. (*See* 225-45; 262-63). As the record reflects, however, Mr. Rumph's symptoms aggravated in 2008. (*See generally* Tr. 23-24; 276-299). By the time Dr. Russell referred Mr. Rumph to Dr. David Cosgrove for "management of low back pain and paresthesias in both legs" on November 20, 2008, Mr. Rumph reported his pain at an eight on a scale of ten and was experiencing medication-related hallucinations. (Tr. 23). Specifically, he reported that bending forward, walking, prolonged standing, and sitting all heightened his pain. (*Id.*). He also exhibited fatigue and sleep problems, headaches and vertigo, nausea with occasional vomiting, hematuria, dizziness and weakness, and hallucinations. (*Id.*). While Dr. Cosgrove initially speculated that Mr. Rumph had lumbar DDD, lumbar radiculitis, lumbar spondylosis, lumbago, and osteoarthrosis of the SI joint, he further added chronic pain syndrome to his list of assessment impressions after seeing Mr. Rumph again in January 2009. (Tr. 24). This severe diagnosis followed the October 2008 MRI and December 2008 discogram cited by the Commissioner as evidence undercutting Dr. Russell's later evaluation. The Commissioner's suggested inference simply does not follow from this evidence.

  Indeed, none of the evidence referenced by the Commissioner, whether considered separately or collectively, rises to the level needed to override a treating

physician's opinion. Where medical evidence does not *conclusively* counter a treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (emphasis added). This indictment includes the specific allegations made by the ALJ. The only genuine inconsistency that the ALJ identified is between Dr. Russell's assertion that Mr. Rumph could only sit, stand, or walk for one hour at a time during a workday and the alternative statement that he could not sit, stand, or walk for any hours during an entire day. It appears that Dr. Russell misinterpreted the question to mean whether Mr. Rumph could sit, stand, or walk *throughout* an entire day. Without commenting on the accuracy of this interpretation, the discrepancy was still not sufficient to undermine conclusively his summary opinion on Mr. Rumph's physical capacity. The same judgment applies to the other complaints listed in the ALJ's opinion; either they are not as inconsistent as they appear, or they are insufficiently conclusive. With these observations in mind, given the inadequacy of his objections, the ALJ incorrectly afforded "little weight" to Dr. Russell's opinion.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner did not apply proper legal standards in reaching his final decision. Accordingly, the decision will be

reversed and remanded by separate order.

**DONE** and **ORDERED** this 12th day of March, 2013.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge